**Legal Services of New Jersey**
P.O. Box 1357
Edison, New Jersey 08818-1357
Phone: (732) 572-9100
Fax: (732) 572-0066
**www.lsnj.org**
**www.lsnjlaw.org**

LSNJ

Legal Services in New Jersey
**60 Years**

Dawn K. Miller, Esq.
**President**

Claudine M. Langrin, Esq.
**Executive Vice President**

Akil Roper, Esq.
**Senior Vice President**

Raquiba Huq, Esq.
**Senior Vice President**

Maryann Flanigan Sutherland, Esq.
**Vice President**

July 27, 2026

**<u>VIA ECF</u>**
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Re: *Doe v. U.S. Department of Homeland Security*, No. 25-1628: Supplemental Letter

Your Honors:

On July 17, 2026, the Circuit directed the parties to submit supplemental letter briefs addressing: (1) were the Court to reach the question, what balancing test should the Court apply to determine whether the extent of any burden on Appellees' constitutional rights imposed by the Refusal Policy is justified by the Government's asserted interest in maintaining that policy; and (2) whether the Refusal Policy is justified under the applicable standard. This letter brief follows.

At the outset, Plaintiffs-Appellees ("Plaintiffs") respectfully note that the Court need not reach these questions related to whether the Government's asserted interest was appropriately balanced because they were not presented to this Court or preserved for appellate review. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *see also United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (citation omitted)); Fed. R. App. P. 28(a)(8)(A). Indeed, the Government did not raise these issues in the District Court proceedings below or present them to this Court on appeal—thereby waiving any arguments related to the balancing test or its purported interest in maintaining the Refusal Policy. *See* ECF No. 1 (Civil Case Statement); ECF No. 34 (Defendants-Appellants' ("Defendants" or "Defs." or "Government") Opening Brief); W.D.P.A., ECF No. 60 (Defs.' Preliminary Injunction Opposition Brief ("PI Opp. Br.")).

Should the Court reach the first question, the balancing test at the heart of the Court's inquiry only applies in specified circumstances. In Count One of their Complaint, Plaintiffs brought constitutional claims challenging the Refusal Policy under the First, Fifth, and Sixth Amendments. *See* Complaint, W.D.P.A., ECF No. 1 ¶¶ 173–79. This Court has previously held the balancing test inapplicable in the Sixth Amendment context. *See Cobb v. Aytch*, 643 F.2d 946, 962 (3d Cir. 1981) (explaining that "*Bell v. Wolfish* is not dispositive of" Sixth Amendment claims and proceeding to consider the Sixth Amendment claims at issue (citation modified)).

As to the First and Fifth Amendment claims, this Circuit has adopted the *Bell v. Wolfish*, 441 U.S. 520 (1979), balancing test when brought by plaintiffs, like the ones here, who have either not been convicted of a crime or are in civil detention. *See, e.g.*, *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325–26 (3d Cir. 2020) (immigration detention). As the Supreme Court articulated in *Bell*, when a person detained pretrial or under civil law raises certain constitutional challenges, courts must first "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." 441 U.S. at 538. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. However, "if a restriction or condition is not reasonably related to a legitimate goal—*if it is arbitrary or purposeless*—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* (emphasis added).

In contrast, in cases involving prisoners, the Supreme Court has articulated a heightened standard that incorporates and expands upon the pretrial *Bell* standard. In *Turner v. Safley*, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). But even under this more stringent, post-conviction standard, the Court does not provide blind deference to a jailer's professed concerns. The Government must present "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Id.* at 89–90. Moreover, courts consider "whether there are alternative means of exercising the right that remain open to prison inmates"; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," also referred to as the "ripple effect"; and "the absence of ready alternatives," which "is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 90 (citation omitted); *see also Ramirez v. Pugh*, 379 F.3d 122, 128 (3d Cir. 2004)

(explaining that under the *Turner* test the government may only assert a legitimate interest if it "adequately describe[es] the specific . . . goal or goals furthered by the restriction"). Thus, under *Turner*, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." 482 U.S. at 91.[1]

The beginning of both inquiries is the Government's asserted interest. However, in this instance, the Government has failed to assert a legitimate interest with the required specificity under either the *Bell* or *Turner* standard. Defendants argued below only that the judiciary has no place in ensuring access to the court system once an individual is placed in civil detention; nowhere do they articulate an adequate rationale for the Refusal Policy. *See* Defs.' PI Opp. Br. at 11 ("[T]he injunctive relief sought would intrude into 'the operation of detention facilities which is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.'" (alterations omitted) (citing *Bell*, 441 U.S. at 548; *Turner*, 482 U.S. at 84–85))). Indeed, outside of records pertaining to individually named plaintiffs, and ICE's "Tool Kit for Prosecutors," the only record evidence the Government submitted in opposition to the motion for a preliminary injunction was a declaration by Defendant Francis Kemp. *See* ECF No. 40 (Supplemental Appendix ("SA")) 465–70. In sum and substance, Mr. Kemp describes the layout of the detention facility and the contract and laws that govern its operation. Absent is any testimony about the rationale behind the Refusal Policy and how its operation is related to the operation of the facility.

At most, the Government gestured at an argument about resource allocation in the District Court proceedings (which was not preserved on appeal), but that argument came belatedly in its motion for clarification of the District Court's preliminary injunction order and was again devoid of actual evidence. In support of that motion, the Government submitted a declaration by Deputy Field Office Director David O'Neill, SA451–63.[2] Mr. O'Neill described the operations at the facility and how virtual appearances operate, SA452–58, and listed examples of times that people were produced for virtual appearances, SA458–62. Mr.

---

[1] Plaintiffs note that *Procunier v. Martinez*, 416 U.S. 396 (1974) was curtailed by *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989), which confined *Procunier* to cases involving outgoing mail correspondence, and emphasized that *Turner* governs prisoners' First Amendment rights. *See also Vogt v. Wetzel*, 8 F.4th 182, 186 (3d Cir. 2021). Plaintiffs therefore submit that *Procunier* does not factor into the questions posed.

[2] As Plaintiffs argued below, even the scant testimony provided by Mr. O'Neill in his declaration was belatedly offered and based in large part on inadmissible hearsay. *See* W.D.P.A., ECF No. 92 (Pls.' Opp. Mtn. to Clarify), at 6–8.

O'Neill's declaration, however, does not explain the rationale behind the Refusal Policy or "describe the specific . . . goal or goals furthered by the restriction." *Ramirez*, 379 F.3d at 128.

While Mr. O'Neill's declaration makes the bald assertion that producing individuals detained at Moshannon for criminal court proceedings would, *inter alia*, "create a considerable strain on ICE ERO resources," he neither defined the "strain" nor identified the resources to which he refers. SA463. If anything, virtual production *is* the resource-conserving *de minimis* response to governmental interests, which "a court may consider . . . as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 91. *See* Plaintiffs' PI Br., W.D.P.A., ECF No. 30-01 at 10 (explaining that "[a]llowing only in-person production for state court proceedings is only less resource-intensive if Defendants rely on in-person production not occurring" and citing to the "exhaustive intake and release procedures [required] every time a person enters and exits Defendants' custody" under the Performance-Based National Detention Standards, which bind Defendants). This failure to establish a valid governmental interest cannot justify the violation of Plaintiffs' constitutional rights.

Moreover, as Plaintiffs have pleaded from the outset of this case, the Refusal Policy is "arbitrary" in that it only restricts Putative Class members' access to New Jersey criminal courts—as opposed to its demonstrated ability to provide virtual access to family court and immigration court. *See Bell*, 441 U.S. at 538–39. The Government therefore cannot attest to any legitimate goal it is accomplishing by failing to afford virtual access to a certain type of court, especially where the alternative is an in-person writ system that does not provide meaningful access to the criminal court system. Thus, the Refusal Policy cannot be justified under *Bell*. And, even if this Court were to apply *Turner*, the Refusal Policy is precisely the kind of circumstance where "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S at 89–90.

For all of the reasons contained within Plaintiffs' Brief and elucidated at oral argument, this Court should find that the District Court did not abuse its discretion in granting the preliminary injunction. *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 256 n.5 (3d Cir. 2020); *see also Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009) ("Unless an abuse of discretion is 'clearly established, or an obvious error has [occurred] in the application of the law, or a serious and important mistake has been made in the consideration of the proof, the judgment of the trial court must be taken as presumptively correct.'" (quoting *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 852 (3d Cir. 1986))).

Respectfully submitted,

*/s/ Shira Wisotsky*
Shira Wisotsky, Esq.
Raquiba Huq, Esq.
Emily G. Thornton, Esq.
**LEGAL SERVICES OF NEW JERSEY**
100 Metroplex Drive, Suite 402
P.O. Box 1357
Edison, New Jersey 08817
908.882.2665
swisotsky@lsnj.org

Alexander Shalom, Esq.
Natalie J. Kraner, Esq.
Gavin J. Rooney, Esq.
Naomi D. Barrowclough, Esq.
Rachel M. Dikovics, Esq. *(admission forthcoming)*
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
ashalom@lowenstein.com

Tiffany J. Lieu, Esq.
**CRIMMIGRATION CLINIC**
**HARVARD IMMIGRATION & REFUGEE CLINICAL PROGRAM**
6 Everett Street, Suite 3106
Cambridge, Massachusetts
617.496.5497
tlieu@law.harvard.edu

*Pro Bono Counsel for Plaintiffs-Appellees*